UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY ELIZABETH GUY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01585 |
| ) | JUDGE CRENSHAW |
| THE METROPOLITAN ) | |
| GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, and ) | |
| JANIE ROMINES ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Amy Guy filed this action, pursuant to 28 U.S.C. § 1983, against Davidson County, Tennessee, Deputy Sheriff Janie Romines and The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), after Romines sprayed Guy with a chemical spray inside the Davidson County Correctional Development Center-Female (the "Correctional Center"). Before the Court are Romines's and Metro's motions for summary judgment. (Docs. No. 77, 82.) For the following reasons, both motions for summary judgment are **DENIED**.

I. UNDISPUTED FACTS AND PROCEDURAL HISTORY

The facts relating to the incident are mainly undisputed, as the incident was filmed by the Correctional Center's surveillance video.

A. THE INCIDENT

On September 11, 2013, Romines was stationed as the only correctional officer in the O pod of the Correctional Center. (Doc. No. 94 at 4.) At approximately 2:30p.m., Romines ordered the inmates congregated in the day room of the O Pod to go to their cells. (Id. at 8-9.) At this point,

Guy, a pretrial detainee, approached Romines at her work station and told her that Guy wanted to see a nurse. (Id. at 9.) Romines did not respond to Guy's request, but instead ordered her to return to her cell. (Id. at 10.) When she did not voluntariliy return to her cell, Romines began to escort Guy to her cell. (Id.) Guy continued to ask Romines about medical services, and paused multiple times while being escorted to her cell. (Id. at 11.) After one instance where Guy paused, Romines claims she believed Guy started turning toward Romines, so she sprayed Guy for one or two seconds with Freeze +P chemical spray. (Id.) After Romines sprayed Guy with the chemical spray, Guy put her hand up around her face. (Id. at 12.) Romines claims that Guy's hand contacted Romines's arm, causing two scratches. (Id. at 12.) This incident was filmed from two angles by the Correctional Center's surveillance video. (Doc. No. 92.)

After the incident, Romines filed a Disciplinary Incident Report. (Doc. No. 97-8.) She stated that as she was escorting Guy to her room, Guy stopped. (Id.). Romines stated that she then took her chemical spray in her right hand and ordered Guy to move, but Guy refused, but instead slowly started turning and "waving her hand." (Id.) Romines stated she then sprayed Guy with the chemical spray. (Id.) Romines stated that after spraying Guy, she became combative, grabbing her arm and hand. (Id.)

Romines also took out a warrant against Guy for assault of an officer, an A misdemeanor. (See Doc. No. 97-13 (the General Sessions order dismissing the warrant)). In the warrant, Romines stated that she "ordered [Guy] to move and she confined [sic] to refuse. She slowly turned, and began waiving her hand trying to hit me." (See Doc. No. 97-12 (email from Guy's public defender to the prosecutor)). Guy's public defender emailed the prosecutor, telling her that the "lie in the warrant taken out by Officer Jamie Romines horrifies" her. (Id.) The General Sessions judge dismissed the warrant at the request of the State. (Doc. No. 97-13.)

B. THE POLICY

The Davidson County Sheriff's Office ("DCSO") has two official policies that relate to officers using chemical sprays on inmates: the DCSO Use of Force Policy, and the DCSO Use of Chemical Agents Policy. (Docs. No. 97-9, 97-10.)

The Use of Force Policy defines the five levels of perceived action by an individual. (Doc. No. 97-9 at MG 001305-06.) A passive resistant individual is defined as an individual that is "unresponsive to requests or commands but generally passive." (Id.) The Use of Force Policy also defines what are the appropriate "Reasonable Officer's Response[s]." (Id. at MG 001306.) "Controlling/defensive tactics" are defined as steps that "must be taken for self-preservation or protection of other employees." (Id.) The use of chemical agents is an example of a controlling/defensive tactic. (Id.) The Use of Force Policy also provides guidelines for when an officer should use a chemical agent on an inmate. (Id. at MG 001307.) It allows use of chemical agents during inmate altercations or if the officer issues the inmate a direct order to stop and the inmate refuses to comply. (Id.) "Chemical agents will be used to help prevent injuries to officers/inmates or other subjects in an attempt to gain control of a situation or to help de-escalate noncompliant behavior." (Id.)

The DCSO Use of Chemical Agents Policy further defines the situations when officers may use chemical agents. (Doc. No. 97-10 at 1.) It authorizes the use of chemical agents only for the following purposes: (1) "to prevent the commission of a felony or misdemeanor;" (2) "in self-defense and in defending the public, staff and inmates;" (3) "to prevent or halt damage to property;" (4) "to enforce agency policy and institutional rules and directives;" (5) "to prevent or quell a disturbance;" and (6) "to prevent escape." (Id.)

3

In her deposition, Romines testified that she believes she is allowed to utilize chemical agents in "passive resistance." (Doc. No. 97-2 at 9.) She testified that this opinion is "based on the training [she] received from the Davidson County Sheriff's Department." (Id.)

C. PRIOR DISCIPLINE INVOLVING CHEMICAL SPRAY

Years before the incident at issue here, on February 27, 2009, Romines attended the Ombudsman School to speak with at risk students. (Doc. No. 97-15.) During her presentation, she stated, "When you don't go to your rooms when I tell you to I use this." (Id.) She proceeded to pull out her chemical spray and held it above her head. She then told the students, "Anytime you don't do what we say we can use this, it is stronger than what the Police have." (Id.) The DCSO issued Romines a "Letter of Concern," informing her that the "director and teachers present were dissatisfied with your presentation and [ ] requested that you refrain from speaking to their students in the future." (Id.) The letter did not mention whether her information regarding the chemical spray was correct. (See id.)

II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however, will be

4

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III. ANALYSIS

In her Amended Complaint, Guy asserts two claims against Romines (1) unlawful arrest and malicious prosecution and (2) excessive force. (Doc. No. 69 at 10-11.) She further alleges that Metro is liable under the doctrine of municipal liability. (Id. at 11.) In Romines's motion for summary judgment, she argues (1) the Court should dismiss Guy's unlawful arrest and malicious prosecution claim for lack of proof; (2) the Court should dismiss Guy's excessive force claim for lack of proof; (3) the Court should dismiss both of Guy's claims under the doctrine of qualified immunity; and (4) the Court should dismiss Guy's deliberate indifference to serious medical needs claim for lack of proof, if Guy asserts one. (Doc. No. 78 at 4-5.) In Metro's motion for summary judgment, it argues that it is not liable for Guy's injuries. (Doc. No. 83 at 3.)

A. UNLAWFUL ARREST AND MALICIOUS PROSECUTION

Romines argues that the Court should grant her motion for summary judgment on the unlawful arrest and malicious prosecution claim because (1) probable cause existed for the warrant, and (2) the criminal charges were not terminated in Guy's favor. (Doc. No. 78 at 5-10.) Guy responds that probable cause did not exist for Romines's warrant because, even if Guy scratched Romines's arm after Romines sprayed her, she did not "intentionally, knowingly, or

recklessly" cause the scratches, but instead was just trying to protect herself. (Doc. No. 93 at 5-6.) Additionally, she argues that when the state court dismissed the charge at the request of the state, that adjudication was in her favor. (Id. at 7.)

Unlawful arrest and malicious prosecution are two separate claims under the Fourth Amendment. Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010) (quoting Barnes v. Wright, 449 F.3d 709, 715-16 (6th Cir. 2006)). To prove an unlawful arrest claim when the plaintiff's arrest was based on a facially valid warrant, the plaintiff must "prove by a preponderance of the evidence that in order to procure the warrant, [the defendant] 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause." Id. (quoting Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000)).

To prove a claim of malicious prosecution under the Fourth Amendment, a plaintiff must prove four elements: (1) "a criminal prosecution was initiated against the plaintiff and [ ] the defendant made, influenced, or participated in the decision to prosecute;" (2) there "was a lack of probable cause for the criminal prosecution;" (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure;" and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." Sykes, 625 F.3d at 308.

1. *Unlawful Arrest*

The question of whether Romines's false statements were material to the finding of probable cause is a dispute of material fact in this case. Romines concedes, for the purposes of this motion, that Guy did not wave her hand at Romines and try to hit her. (Doc. No. 78 at 8.) Romines claims that it is undisputed that Romines believed that Guy scratched her, which is still sufficient

6

for probable cause of assault. (Id. at 9.) However, as Guy argues, Romines must have believed that Guy "intentionally, knowingly, or recklessly" caused the scratches on her arm. There is a disputed issue of fact as to whether Romines believed that Guy "intentionally, knowingly, or recklessly" caused the scratches, so the Court denies summary judgment on this element. This is the only element that Romines contests in the unlawful arrest claim; accordingly, the Court denies summary judgment on the claim.

   *2. Malicious Prosecution*

There is a question of material fact as to whether probable cause existed for the criminal prosecution for the malicious prosecution claim. As explained above, it is disputed whether Romines believed that Guy "intentionally, knowingly, or recklessly" caused the scratches. Therefore, the Court denies summary judgment on this element.

The criminal proceeding was resolved in Guy's favor. The Tennessee Supreme Court has previously held that a "nolle prosequi" constitutes a "termination of the criminal prosecution in defendant's favor . . . ." Scheibler v. Steinburg, 167 S.W. 866 (Tenn. 1914). It found that a nolle prosequi is "a discharge without acquittal, and can be awarded only by the Attorney General and the court." Id. The Tennessee Rules of Criminal Procedure allow the state to "terminate a prosecution by filing a dismissal of an indictment, presentment, information, or complaint." TENN. R. CRIM. P. 48(a). The Rules do not refer to a nolle prosequi. Therefore, the Court finds that a nolle prosequi and a dismissal at the request of the state are the functional equivalents of each other. Following the Scheibler decision, the Court holds that the dismissal at the request of the state resolves the criminal proceeding in Guy's favor. As such, the Court denies summary judgment on this element. These are the only two elements that Romines contests regarding Guy's malicious prosecution claim. The Court denies summary judgment on the claim.

B. EXCESSIVE FORCE

Romines argues that the Court should grant her motion for summary judgment on the excessive force claim because: (1) the use of force was de minimis and (2) Romines's actions were not objectively unreasonable "from the perspective of a reasonable officer on the scene." (Doc. No. 78 at 11-13.) Guy counters that the force that Romines used was not de minimis and was objectively unreasonable. (Doc. No. 93 at 3-4.)

When a pretrial detainee alleges excessive force, she must prove "that the force purposely or knowingly used against [her] was objectively reasonable." Kingsley v. Hendrickson, 135 S.Ct 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . . ." Id. A court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)).

First, Romines argues that "de minimis use of force does not rise to the level of a constitutional violation." (Doc. No. 78 at 12.) She argues that the force she used on Guy was de minimis because it was only a "short burst of chemical spray towards Plaintiff's face." (Id.) Further, she argues that Guy "did not suffer any permanent or long term physical, mental, or emotional injury as a result of the use of force incident." (Id.) However, a "significant injury is [not] a threshold requirement for stating an excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 36 (2010). Instead, the "core judicial injury" is "whether force was applied in a good-faith

8

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Here, based on the video and the record before the Court, there is a disputed issue of a material fact as to whether Romines's force was applied in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Therefore, the Court denies summary judgment on this element.

Next, there is a disputed issue of material fact as to whether Romines's use of force was objectively reasonable from the perspective of a reasonable officer in her position. Romines believes she acted reasonably because she knew Guy had a potential for violence, Guy stopped walking to her room, and Guy turned toward Romines. (Doc. No. 78 at 13.) Guy argues that there was no reason for Romines to perceive her as a threat when she was only asking for medical assistance. (Doc. No. 93 at 4-5.) The video also makes this a disputed issue of a material fact for the jury to decide. The Court denies summary judgment on this element. As these are the only elements that Romines disputes regarding the excessive force claim, the Court denies summary judgment on the claim.

C. QUALIFIED IMMUNITY

Romines alleges she is entitled to qualified immunity because she did not violate any of Guy's clearly-established constitutional rights. She argues that "a reasonable officer confronted with the situation in this cases would have acted with at least as much force as the force used by Officer Romines." (Doc. No. 78 at 17.)

Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil actions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The initial question is whether "the facts

alleged show the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). The next step is to determine whether the constitutional right at issue has been "clearly established" under the law. Cope v. Heltsley, 128 F.3d 452, 458 (6th Cir. 1997).

Here, there is a dispute of material fact on whether Romines violated Guys's clearly-established constitutional rights. Romines's only argument for qualified immunity is that she acted as any reasonable officer would in her situation. As discussed in Section B of this opinion, the question of whether a reasonable officer would have acted with at least as much force as Romines did is a disputed issue of a material fact. Again, this is the only argument Romines raises on the qualified immunity question; accordingly, the Court denies summary judgment on Romines's qualified immunity defense.

D. DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

Romines also moves for summary judgment on Guy's deliberate indifference to serious medical needs claim, "[t]o the extent that Plaintiff attempts to assert such a claim . . . ." (Doc. No. 78 at 17-18.) Romines claims that Guy did not prove that she has "a serious medical condition that supports a claim for deliberate indifference under the Fourteenth Amendment." (Id. at 18.) Specifically, Romines refers to the facts that Guy "refused medical treatment only a few hours before the use of force incident," she "did not require significant medical treatment after the use of force," and she "did not seek medical treatment for a period of weeks or months after she was released from detention." (Id. at 18-19.) Guy responds that Romines knew Guy was asking for medical help and refused to help her. (Doc. No. 92 at 10-11.)

While the Eighth Amendment does not apply to pretrial detainees, the Due Process Clause of the Fourteenth Amendment provides them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment. Gray v. City of Detroit, 399 F.3d 612,

10

615-16 (6th Cir. 2005). A detainee's right is violated "when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir 2001). There is an objective and a subjective component to a deliberate indifference claim. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component requires the existence of a "sufficiently serious" medical need. Id. A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 897 (6th Cir. 2004). To prove the subjective component, a plaintiff must show that the defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw that inference, and that he then disregarded the risk." Dominguez v. Corrections Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009).

Here, a dispute of material fact exists as to whether Guy had a "sufficiently serious" medical need. In a form signed on the day Romines allegedly was deliberately indifferent to Guy's medical needs, a nurse states that Guy refused treatment. (Doc. No. 77-1 at 27.) The form states that Guy refused medication, specifically "Librium/CIWA/COWS." The form states that the potential consequences of refusing the medication includes the worsening of medical conditions, death, or permanent disability. (Id.) This information is sufficient to create a dispute of material fact as to whether Guy could meet the objective criteria. Therefore, the Court denies summary judgment on this element.

Romines does not argue for summary judgment on the subjective element of this claim, so the Court denies summary judgment on the deliberate indifference to serious medical needs claim.

E. MUNICIPAL LIABILITY

In its motion for summary judgment, Metro argues that it is not liable for Romines's actions because (1) Guy's harm was not caused by a constitutional violation; and (2) Metro is not responsible for any violation that did occur. (Doc. No. 83 at 3.) Guy responds that it is a constitutional violation to use chemical spray on a pre-trial detainee when the detainee is not being threatening and that Metro is responsible for the constitutional violation because Romines was following Metro's Use of Chemical Agents Policy.

Municipalities are "persons" for the purposes of § 1983 liability. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978). However, municipalities cannot be held liable pursuant to § 1983 under a theory of respondeat superior. Id. at 691; Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. The plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

An officer's use of a chemical spray on a pretrial detainee who is disobeying direct orders can be a constitutional violation. Metro's first argument is that the Constitution allows officers to use chemical sprays on inmates who are not following direct orders in all situations. (Doc. No. 83 at 3-4.) However, as discussed in Part B of this Section, the question of whether the use of force is a constitutional violation turns on whether the officer acted in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Because there is a dispute as

12

to whether Romines acted in a good-faith effort or maliciously, the Court denies summary judgment on the basis that Romines's behavior is not a constitutional violation.

Viewing the facts in the light most favorable to Guy, Metro's Use of Chemical Agents Policy may be overly broad, allowing officers to use chemical weapons in situations that may not be objectively reasonable. Guy's argues that Metro has an "actual written policy permitting its officers to use chemical weapons to enforce rules, which amounts to punishment." (Doc. No. 95 at 6.) Metro responds that both the American Correctional Association ("ACA") and the Tennessee Corrections Institute ("TCI") have accredited its training of officers regarding the use of force and use of chemical agents (Doc. No. 85 at 2), and its policies are not unconstitutional. (Doc. No. 83 at 16.) However, Metro does not deny that its Use of Chemical Agents Policy allows an officer to use a chemical spray on an inmate who is passively resistant. This, as discussed in Part B of this opinion, can be a constitutional violation. Therefore, the Court finds the potential existence of an unconstitutional policy connected to Metro because the Use of Chemical Agents Policy allows the use of chemical agents in situations that may be unreasonable.

There is a dispute of a material fact on whether the policy was the "moving force" behind Guy's injuries. Romines testified in her deposition that she is allowed to utilize a chemical agent in "passive resistance." (Doc. No. 97-2 at 9.) She believed that to mean "when you've given directives and they are noncompliant in order to get them to comply with the rules given to them." (Id.) She testified that this opinion is based on the training she received from the Davidson County Sheriff's Department. (Id.) This is sufficient to raise a dispute of material fact on whether Metro's Use of Force Policy was the "moving force" behind Guy's injuries. Therefore, the Court denies Metro's motion for summary judgment on the municipal liability claim.

IV. CONCLUSION

For the foregoing reasons, Romines's motion for summary judgment (Doc. No. 77) is **DENIED**. Additionally, Metro's motion for summary judgment (Doc. No. 82) is **DENIED**. The Court will file an accompanying order.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE